IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

THOMAS MCCLAIN,                          )
                                         )
                Plaintiff,               )
                                         )
        v.                               )
                                         )    Civil Action No. 09-1641
COMMONWEALTH OF                          )
PENNSYLVANIA, DEPARTMENT OF              )
CORRECTIONS,                             )
                                         )
                Defendant.               )

## MEMORANDUM OPINION

Pursuant to Title VII, 42 U.S.C. §§ 2000e *et seq.*, Thomas McClain ("plaintiff"
or "McClain"), an African-American male, brought a single claim of race
discrimination against his former employer, the Commonwealth of Pennsylvania,
Department of Corrections ("defendant" or "DOC"). Plaintiff alleges the DOC
terminated his employment for sleeping on the job, but did not terminate a white
employee for similar conduct. On February 28, 2011, defendant filed a motion for
summary judgment (ECF No. 21), which is the subject of the instant memorandum
opinion. Because, as discussed below, there are genuine issues of material fact in
dispute, the motion will be denied.

## Factual Background

### A. McClain's Employment with the DOC

The DOC hired McClain on June 23, 1993. (Joint Concise Statement of
Material Facts ("J.C.S.") (ECF No. 35) ¶ P3.) At all times relevant to the case

McClain held the position of community corrections center monitor ("monitor") at Riverside Community Corrections Center ("Riverside"). (Id. ¶¶ D20, D21.) Riverside is a residential facility or "halfway house" for inmates with prelease status or who are on parole. (Id. ¶ D2.) Monitors are responsible for the care and custody of the residents and the security of the facility. (Id. ¶ D4.) Monitors are required, *inter alia*, to check residents in and out of the facility, conduct security rounds, and pass out medication. (Id.)

Riverside is open twenty-four hours per day, and monitors are always on duty. (Id. ¶ P9.) McClain was assigned to the 11:00 p.m. to 7:00 a.m. shift. (Id. ¶ P15.) During his shift there was always another monitor on duty, but generally no supervisory personnel were present. (Id. ¶¶ P16, P18.) Roy Wyland ("Wyland"), a white male monitor, was assigned to the night shift with McClain. (Id. ¶ P19.) McClain's direct supervisors were Lieutenant Martin Saunders ("Saunders") and Riverside Director William Carnuche ("Carnuche"). (Id. ¶ P17.) Carnuche reported to the Region III Director, Marcia Combine ("Combine"), who supervised the community correction centers in the western Pennsylvania region. (Id. ¶ D6.)

## B. McClain's Disciplinary History

The DOC has a code of ethics that sets standards of employee conduct. (Id. ¶ P22.) Code of Ethics section B, number 19 ("Code of Ethics no. 19") provides that "[e]mployees shall not read books, magazines, newspapers, or other non-job related printed material while on official duty. Employees are required to remain alert while on duty; inattentiveness, sleeping, or the appearance thereof is prohibited."

(Def.'s App. (ECF No. 23), Ex. 6 at 5.) Attentiveness is particularly required of monitors because the residents they supervise are in the custody of the state. (Def.'s App., Ex. 36 ("Combine Dep.") at 34:6-9.)

On July 18, 2007, DOC staff noticed McClain lying down on a couch while on duty. (J.C.S. ¶ D32; Def.'s App., Ex 12.) Disciplinary procedures were initiated and fact-finding was completed on August 8, 2007. (Def.'s App., Ex. 12.) The investigation revealed that McClain was on the couch for thirty-one minutes "giving the appearance of sleeping while on duty" in violation of Code of Ethics no. 19. (Id.) During fact-finding, McClain denied sleeping.[1] (Def.'s App., Ex. 40 ("McClain Dep.") at 26-27.) In addition to recommending discipline for violation of Code of Ethics no. 19, the fact-finder recommended discipline for violating Code of Ethics no. 29, which states that employees must cooperate with internal investigations and respond truthfully to any questions. (Def.'s App., Ex. 12.)

After the fact-finding and in accordance with DOC disciplinary procedures, a predisciplinary conference ("PDC") was held on September 7, 2007. (J.C.S. ¶ D16; Def.'s App., Ex. 14.) After hearing testimony from McClain and reviewing the records of the fact-finding, the committee substantiated the charges and recommended that McClain be subject to disciplinary action. (Def.'s App., Ex. 15.) Based on this recommendation, McClain was suspended for five days without pay and benefits from October 14 through 18, 2007. (J.C.S. ¶ D33; Def.'s App., Ex. 18.)

---

[1] McClain now admits that he was sleeping during the 2007 incident. (Def.'s App., Ex. 40 ("McClain Dep.") at 26:6-20.)

The DOC also gave McClain a final warning that incidents of a similar nature would result in termination. (<u>Id.</u>)

On July 1, 2008, McClain was again caught sleeping on the job. (J.C.S. ¶ D45.) Saunders discovered McClain sleeping in a chair and woke him up. (Def.'s App., Ex. 19.) In accordance with DOC disciplinary procedures, there was fact-finding and a PDC, during which McClain admitted to sleeping on duty. (J.C.S. ¶ D45.) For his second Code of Ethics no. 19 violation, the DOC terminated McClain effective July 28, 2008. (Def.'s App., Ex. 25.) The DOC replaced McClain's full-time position by promoting Deborah Parsons, a white part-time employee. (J.C.S. ¶¶ P64, P65.)

### C. Wyland's Disciplinary History

Plaintiff alleges that during his employment at Riverside, defendant did not discipline Wyland, despite knowing that he was sleeping on the job. (Pl.'s Br. in Opp'n (ECF No. 29) at 1.) Wyland began working for the DOC in 1994. (J.C.S. ¶ D26.) In January 2008, Wyland was disciplined for leaving a shift early without permission, a violation of the Code of Ethics. (<u>Id.</u> ¶ P29.) Wyland was suspended for five days and given a final warning. (<u>Id.</u> ¶ P28.) On May 17, 2008, Wyland retired from his position. (<u>Id.</u> ¶ D27.)

In May 2008, Saunders showed a security camera video of Wyland to Dave Mandella ("Mandella"), an official of the Pennsylvania State Correctional Officer Association ("union"). The parties dispute the character of this video. Mandella averred that the video "clearly showed Mr. Wyland sleeping." (Pl.'s App. (ECF No.

30), Ex. 23 ("Mandella Decl.") ¶ 6.) The video showed Wyland covering himself with a blanket and "unequivocally showed Wyland sleeping at times and at other times giving the appearance of sleeping." (Id. ¶¶ 7, 8.) Saunders told Mandella that "he [Saunders] was aware that Mr. Wyland regularly slept while on duty" and that he was going to "talk to" Wyland about his conduct. (Id. ¶¶ 9, 10.)

Mandella's statements regarding the video conflict with the testimony of Saunders and Combine. Saunders testified that he could not tell if Wyland was sleeping from the video because the camera position only showed the back of his head. (Def.'s App., Ex. 38 ("Saunders Dep.") at 31-32.) Saunders testified, however, that Wyland was giving the appearance of sleeping in the video. (Id.) Giving the appearance of sleeping is a violation of Code of Conduct no. 19. (Def.'s App., Ex. 6 at 5.) Combine testified that the video of Wyland showed the back of his head and "was not sufficient evidence to warrant a fact-finding or any sort of discipline." (Combine Dep. at 60:16-61:15.)

Saunders testified that when he showed the video of Wyland giving the appearance of sleeping to union officials and Combine, he also showed video of McClain giving the appearance of sleeping. (Saunders Dep. at 29:9-18, 30-32.) Defendant asserts Saunders did not pursue discipline against either McClain or Wyland based on the video evidence. (Id. at 41 ("If I don't see you with your eyes closed physically sleeping, I wouldn't take action against you.").)

Combine testified that she saw the video of Wyland. (Combine Dep. at 66) She recalled seeing video of McClain lying on the couch, for which he was

disciplined in 2007. (Id.) Contrary to Saunders' testimony, she did not observe any other videos of McClain giving the appearance of sleeping. (Id.) Mandella opined that he saw the video of Wyland sleeping, and the video of the July 18, 2007 incident involving McClain. (Mandella Decl. ¶¶ 4, 17.) Saunders did not show Mandella any other video of McClain sleeping on the job. (Id.)

Carnuche testified that a fact-finding was planned for Wyland regarding the video, but Wyland retired before it could commence.[2] (Def.'s App., Ex. 37 ("Carnuche Dep.") at 11:15-21.) While Carnuche described the video as showing Wyland "dozing off," he noted that the video was not conclusive. (Id. at 10-11.)

The timing of the Wyland video is in dispute. Saunders and Combine testified that after viewing the Wyland video, Saunders issued a memorandum (Def.'s App., Ex. 8.), reminding all staff to comply with Code of Ethics no. 19 and remain attentive while on duty. (Saunders Dep. at 29-30; Combine Dep. at 35.) The memo was dated February 7, 2007, but Saunders believed that date was a typographical error because he did not start working at Riverside until August 2007. (Saunders Dep. at 30.) Mandella was shown the Wyland video in May 2008, well after the memo was issued. (Mandella Decl. ¶ 4.) Saunders could not remember whether he showed the video to Mandella and other union officials in 2007 or 2008. (Saunders Dep. at 31:5-6.) Combine was not positive about the timing. (Combine Dep. at 35:1-3.)

### D. Other DOC Disciplinary Issues

---

[2] Defendant notes that if these facts are accepted as true, it does not establish differential treatment based on race. Under these facts, Wyland was going to be disciplined, but retired before it could be imposed. (Def.'s Reply (ECF No. 37), at 6.)

Contrary to Saunders's testimony that he only disciplined those he observed sleeping in his presence, plaintiff asserts that the DOC used video evidence to discipline employees. Retired DOC human resources director Timothy Musser ("Musser") testified that the DOC disciplined employees for giving the appearance of sleeping. (Pl.'s App., Ex. 8 ("Musser Dep.") at 16.) Musser believed that discipline had been recommended based on video evidence, but he was not certain. (Musser Dep. at 16:25-17:4.) McClain's suspension in 2007 was based in part on video evidence that gave the appearance he was sleeping.[3] (Def.'s App., Ex. 12.)

Both Mandella and Sherri Lee ("Lee"), another union official, assert that the DOC regularly disciplined black employees more harshly than white employees. Mandella raised the issue of unequal discipline with the DOC management on at least two occasions. (Mandella Decl. ¶ 16.) Mandella was McClain's union representative at McClain's July 15, 2008 PDC, and he noted for the record that McClain was being unfairly singled out. (Pl.'s App., Ex. 22.) Lee perceived that black DOC employees were regularly treated more severely in the disciplinary process than white employees accused of the same or similar conduct. (Pl.'s App., Ex. 24 ("Lee Decl.") ¶ 5.) She brought this issue to the attention of Saunders and Combine during McClain's disciplinary process and continued to raise the issue

---

[3] The July 18, 2007 incident occurred before Saunders arrived at Riverside in August 2007. (Saunders Dep. at 11.) Saunders' statement that he would only discipline employees he physically caught sleeping does not conflict with the imposition of discipline for this incident. Additionally, several witnesses, including DOC supervisors at an adjacent institution, saw McClain appear to be sleeping on July 18, 2007. (Def.'s App., Ex. 12.)

after McClain's termination. (Id. at ¶¶ 8, 12.) Aside from his termination, McClain did not feel discriminated against while working for the DOC. (McClain Dep. at 31.)

## Procedural History

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on October 2, 2008. (Pl.'s Compl. (ECF No. 1) ¶ 2.) On October 7, 2008, plaintiff cross-filed with the Pennsylvania Human Relations Commission. (Id.) The EEOC issued a Notice of Right to Sue on September 18, 2009. (Id.) The instant complaint was filed on December 15, 2009. (Id.) Pending before the court is defendant's motion for summary judgment (ECF No. 21).

## Standard of Review

Federal Rule of Civil Procedure 56 provides in relevant part:

> **(a) Motion for Summary Judgment or Partial Summary Judgment.** A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.
> . . .
> **(c) Procedures.**
>
> **(1)** *Supporting Factual Positions.* A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

FED. R. CIV. P. 56(a), (c)(1)(A), (B).

> Rule 56 of the Federal Rules of Civil Procedure "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."

Marten v. Godwin, 499 F.3d 290, 295 (3d Cir. 2007) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)).

An issue of material fact is in genuine dispute if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see Doe v. Abington Friends Sch., 480 F.3d 252, 256 (3d Cir. 2007) ("A genuine issue is present when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of his burden of proof.") (citing Anderson, 477 U.S. at 248; Celotex Corp., 477 U.S. at 322-23).

> "[W]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material

> facts . . . . Where the record taken as a whole could not
> lead a rational trier of fact to find for the nonmoving
> party, there is no genuine issue for trial."

Scott v. Harris, 550 U.S. 372, 380 (2007) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)).

In deciding a summary judgment motion, a court must view the facts in the light most favorable to the nonmoving party and must draw all reasonable inferences, and resolve all doubts in favor of the nonmoving party. Woodside v. Sch. Dist. of Phila. Bd. of Educ., 248 F.3d 129, 130 (3d Cir. 2001); Doe v. Cnty. of Centre, Pa., 242 F.3d 437, 446 (3d Cir. 2001); Heller v. Shaw Indus., Inc., 167 F.3d 146, 151 (3d Cir. 1999). A court must not engage in credibility determinations at the summary judgment stage. Simpson v. Kay Jewelers, Div. of Sterling, Inc., 142 F.3d 639, 643 n.3 (3d Cir. 1998).

## Discussion

Courts analyze Title VII employment discrimination claims where no direct evidence of discrimination is presented under the framework developed by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511 (2002). This framework calls for a three-step, burden-shifting analysis. The plaintiff has the initial burden of establishing a *prima facie* case of racial discrimination. Id. at 802. The burden then shifts to the employer to "articulate some legitimate, nondiscriminatory reason" for the adverse employment action. Id. To carry this rebuttal burden, the defendant needs only to "clearly set forth" a nondiscriminatory reason; it is a burden of

production, not persuasion. <u>Texas Dept. of Community Affairs v. Burdine</u>, 450 U.S. 248, 255 (1981). If the defendant meets this burden, the plaintiff has "a full and fair opportunity" to demonstrate that the employer's alleged reasons are pretext. <u>Id.</u> at 256.

## A. The Prima Facie Case

To establish a *prima facie* case of unlawful employment discrimination, a plaintiff must show (1) he belongs to a protected class, (2) he was qualified for the position, (3) he was subjected to an adverse employment action, and (4) the action occurred under circumstances that give rise to an inference of unlawful discrimination. <u>Sarullo v. United States Postal Serv.</u>, 352 F.3d 789, 797 (3d Cir. 2003). The first three elements are not in dispute. McClain is African-American, and race is a protected class under Title VII. Defendant admits that McClain was qualified by virtue of his working in the position for fifteen years. (Br. in Supp. (ECF No. 24), at 6.) McClain's termination was an adverse employment action. <u>Abramson v. William Patterson Coll. of N.J.</u>, 260 F.3d 265, 288 (3d Cir. 2001).

Defendant argues that McClain cannot satisfy the fourth element because he did not present evidence to demonstrate that the DOC treats blacks less favorably than whites. (Br. in Supp. at 6.) Proof of unfavorable treatment, however, is not a requirement in every case. <u>Matczak v. Frankford Candy & Chocolate Co.</u>, 136 F.3d 933, 939 (3d Cir. 1997). Instead, "favorable treatment outside the protected class is an 'alternative' element to a prima facie case." <u>Id.</u>

Plaintiff can raise an inference of discrimination by showing that he was replaced by someone outside the protected class. Marzano v. Computer Science Corp., 91 F.3d 497, 503 (3d Cir. 1996); see Olson v. General Elec. Astrospace, 101 F.3d 947, 951 (3d Cir. 1996) (fourth element may be satisfied by "a rejection of plaintiff accompanied, or followed by, a filling of the job with a person not belonging to the protected category"); Chipollini v. Spencer Gifts, Inc., 814 F.2d 893, 897 (3d Cir. 1987) (fourth element satisfied if plaintiff is replaced by a person sufficiently outside the protected group to permit an inference of discrimination) (*abrogated on other grounds as recognized in* McKenna v. Pac. Rail Serv., 32 F.3d 820 (3d Cir. 1994)).[4] Because McClain was replaced by Deborah Parsons, a white woman, he met the requirements of the fourth element of the *prima facie* case.[5]

## B. Legitimate, Nondiscriminatory Reason for Termination

The DOC alleges it fired McClain for sleeping on the job or giving the appearance of sleeping in violation of the DOC Code of Ethics. A violation of workplace conduct rules is a legitimate, nondiscriminatory reason for termination. Raytheon Co. v. Hernandez, 540 U.S. 44, 50 (2003) (refusing to rehire employees

---

[4] Olson and Chipollini did not consider Title VII discrimination claims, but discrimination claims under the Americans with Disabilities Act, Olson, 101 F.3d at 949, and the Age Discrimination in Employment Act, Chipollini, 814 F.2d at 894. The burden-shifting analysis remains the same. Marzano v. Computer Science Corp., 91 F.3d 497, 503 n.2 (3d Cir. 1996).

[5] An alternative means of satisfying the fourth element would be McClain's showing that he was treated differently than a person outside the protected class, in this case Wyland. This argument will be examined under the pretext section of this memorandum opinion because—given McClain's replacement by Deborah Parsons—there is a sufficient basis to conclude that plaintiff established his prima facie case. Evidence may be used to establish the *prima facie* case and to show pretext. "[E]vidence supporting the prima facie case is often helpful in the pretext stage and nothing about the McDonnell Douglas formula requires us to ration the evidence between one stage or the other." LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 234 n.10 (3d Cir 2007) (citing Farrell v. Planters Lifesavers Co., 206 F.3d 271, 286 (3d Cir. 2000)); see Doe v. C.A.R.S. Protection Plus, Inc., 527 F.3d 358, 370 (3d Cir. 2008).

previously terminated for violating workplace rules is legitimate, nondiscriminatory policy). The defendant's burden at this stage is light. "The employer need not prove that the tendered reason *actually* motivated its behavior, as throughout this burden-shifting paradigm the ultimate burden of proving intentional discrimination always rests with the plaintiff." Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994). Here, the DOC met its burden of "explaining clearly the nondiscriminatory reason[] for its action[]." Burdine, 450 U.S. at 260.

## C. Pretext

Once the defendant has met its burden of production, a plaintiff has "a full and fair opportunity" to demonstrate that the employer's alleged reasons are pretext for discrimination. Id. at 256. In order to carry this burden, the plaintiff must show "'*both* that the reason was false, *and* that discrimination was the real reason.'" Fuentes, 32 F.3d at 763 (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993). In Fuentes, the United States Court of Appeals for the Third Circuit described the plaintiff's burden:

> [T]he plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.

Fuentes, 32 F.3d at 764. Here, plaintiff adduced evidence under both prongs of the pretext analysis.[6]

---

[6] Once a plaintiff successfully demonstrates pretext, he "need not present affirmative evidence of discrimination beyond h[is] prima facie showing if a rational factfinder could conclude from the

## 1. Prong One

In order to satisfy the first prong of the pretext analysis, "the non-moving plaintiff must demonstrate . . . weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the defendant employer's legitimate reasons. Fuentes, 32 F.3d at 765. These inconsistencies must be such that a jury could rationally find the employer's reasons "unworthy of credence." Id. (quoting Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 531 (3d Cir. 1992)).

Plaintiff points out inconsistencies in the deposition testimony of DOC supervisors. Saunders and Combine testified that after viewing the video of Wyland, they issued the warning memorandum dated February 6, 2007. This date is well before Mandella recalls seeing the video sometime around May 2008. In his deposition, Saunders could not remember if he showed the video to Mandella in 2007 or 2008. Saunders also testified that the February 6, 2007 date on the memorandum was a mistake because he did not start working at Riverside until August 2007. Plaintiff infers from these inconsistencies that Saunders and Combine are being untruthful to give the impression that they gave all employees who violated Code of Ethics no. 19 a final warning after Wyland was seen in the video appearing to be sleeping.

Saunders testified that he did not take action against an employee unless he caught the employee sleeping in his presence. Musser testified, however, that the DOC previously disciplined employees based on video evidence. Musser stated that

evidence of pretext that [the employer's] actions were discriminatory." Abramson v. William Paterson Coll. of N.J., 260 F.3d 265, 283, (3d Cir. 2001).

the DOC disciplined employees for giving the appearance of sleeping, because it is hard to prove that an employee is actually sleeping. Although he was not certain, Musser believed that video evidence was used as a basis to discipline under Code of Ethics no. 19. Carnuche testified that discipline would have been initiated against Wyland based on the video. Fact-finding was in the developmental stage, but Wyland retired before it could commence. Combine said that there was not going to be fact-finding because the video evidence was not sufficient.

Saunders testified that he showed Mandella and Combine videos of both Wyland and McClain sleeping, but took no disciplinary action against either based on that evidence. Mandella and Combine did not see any video of McClain sleeping, except for the July 18, 2007 incident, which took place before Saunders began working, and for which McClain was disciplined.

When considering evidence at the summary judgment stage, a court must view the facts in the light most favorable to the nonmoving party. Doe v. C.A.R.S. Protection Plus, Inc., 527 F.3d 358, 362 (3d Cir. 2008). Implausibilities, inconsistencies, incoherencies and contradictions, however weak, are viewed in the light most favorable to the nonmoving party. Andes v. New Jersey City University, No. 10-2097, 2011 WL 1053619, at *3 (3d Cir. Mar. 24, 2011). While this is a close case in light of Wyland's retirement, the court, after considering the contradictions and inconsistencies in the record and viewing the evidence in the light most favorable to McClain, finds that a reasonable jury could conclude the DOC's proffered reason for the disparate discipline is pretextual. See Fasold v. Justice, 409

F.3d 178, 185-86 (3d Cir. 2005) (the defendants in an age discrimination case offered a number of legitimate reasons for firing the plaintiff; however, there was enough contradictory evidence on record for a jury to disbelieve the employer's rationales, and the Court of Appeals for the Third Circuit reversed the district court's grant of summary judgment); Nguyen v. AK Steel Corp., 735 F. Supp. 2d 346, 371 (W.D. Pa. 2010) (holding that contradicting explanations of the alleged offense that led to termination, as well as weaknesses in deposition testimony about the employer's disciplinary process, presented a credibility determination for a jury to decide and precluded summary judgment).

## 2. Prong Two

Plaintiff may also show pretext under prong two by adducing evidence that defendant 1) previously discriminated against plaintiff, 2) previously discriminated against others in plaintiff's protected class, or 3) treated similarly situated persons outside of the protected class more favorably than plaintiff. Simpson v. Kay Jewelers, Div. of Sterling, Inc., 142 F.3d 639, 645 (3d Cir. 1998). In the context of employee discipline, "[a] violation of company policy can constitute a pretext for unlawful discrimination if others similarly situated also violated the policy with no adverse consequence." Goosby v. Johnson & Johnson Med., Inc., 228 F.3d 313, 322 (3d Cir. 2000).

McClain admits that, other than his termination, he was not discriminated against by the DOC. Plaintiff asserts, however, that the DOC previously discriminated against African-Americans. Mandella and Lee aver that black DOC

employees were regularly disciplined more harshly than white employees. These general allegations are not supported with specific factual evidence of record. A non-moving party "may not rest upon mere allegations . . . or . . . vague statements" in resisting summary judgment. Quiroga v. Hasbro, Inc., 934 F.2d 497, 500 (3d Cir. 1991). Accordingly, this assertion cannot support plaintiff's argument.

Plaintiff argues that the DOC treated Wyland, a white employee, more favorably because it did not terminate Wyland for sleeping on the job. At the pretext stage, the plaintiff must show with some specificity that the comparators were more favorably treated.[7] Simpson, 142 F.3d at 646. To be considered similarly situated, employees must have committed infractions of "comparable seriousness." McDonald, 427 U.S. at 282; Nguyen, 735 F. Supp. 2d at 361. The employees "'must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" Hodczak v. Latrobe Specialty Steel Co., 761 F. Supp. 2d 261, 269 (W.D. Pa. 2010) (quoting Ogden v. Keystone Residence, 226 F. Supp. 2d 588, 603 (M.D. Pa. 2002)); see Opsatnik v. Norfolk S. Corp., 335 F. App'x 220, 223 (3d Cir. 2009).

Defendant disputes the assertion that McClain and Wyland were similarly situated. Defendant argues that McClain was caught sleeping in the presence of a

---

[7] Simpson stands for the proposition that evidence of a single comparator cannot be viewed in a vacuum, especially where the record as a whole does not support a finding of discrimination. In Simpson, the plaintiff relied on one comparator while there were thirty-four other similarly situated employees in the nonprotected class who were treated the same as the plaintiff. Id. at 645-46. These facts are distinguishable from the instant case because McClain and Wyland were the only two Riverside employees for whom there was evidence of sleeping or giving the appearance of sleeping on the job.

supervisor, whereas Wyland was not caught by a supervisor, but was only seen on video giving the appearance of sleeping. Although this difference is not contradicted, plaintiff points to the testimony of Musser, stating that employees had been disciplined for giving the appearance of sleeping and that video evidence had been used to discipline employees in the past.[8]

Defendant notes that McClain was terminated for his second Code of Ethics no. 19 violation, but Wyland did not have any Code of Ethics no. 19 violations. Wyland was, however, on his final warning due to leaving his post early in January 2008. "'[P]recise equivalence in culpability between employees'" is not required, only that they be engaged in acts of "'comparable seriousness.'" San Filippo v. Bongiovanni, 30 F.3d 424, 432-33 (3d Cir. 1994) (on an appeal addressing the plaintiff's request for a Rule 56(f) [current Rule 56(d)] continuance to permit further discovery, the court of appeals held it was an abuse of the district court's discretion not to permit additional discovery related to employees who had committed offenses of comparable or greater seriousness) (quoting McDonald, 427 U.S. at 283) (*abrogated on other grounds in* Borough of Duryea, Pa. v. Guarnieri, No. 09-1476, 2011 WL 2437008 (U.S. June 20, 2011); see Nguyen, 735 F. Supp. 2d at 365 ("[T]he test for determining whether a comparator is proper does not require the misconduct to be identical, but only that the comparator's misconduct be *similar* without such differentiating or mitigating circumstances as would diminish his or her conduct or the employer's treatment of such."); Cange v. Phila. Parking Auth.,

---

[8] There is nothing in the record to indicate the type of discipline employees received, or whether that discipline resulted in termination.

No. 08-3480, 2009 WL 3540784, at *9 (E.D. Pa. Oct. 30, 2009) (a plaintiff terminated for sleeping was comparable to an employee who was "loafing" because both loafing and sleeping were punishable by termination). The DOC did not warn or terminate Wyland for sleeping or appearing to be asleep, both of which violate Code of Ethics no. 19. The recommendation to terminate McClain and the decision not pursue discipline against Wyland were made by the same supervisors, Saunders and Combine.

Based on the record evidence and viewing all evidence in the light most favorable to plaintiff, the court determines that a reasonable fact finder could conclude that McClain and Wyland were similarly situated.

Defendant argues that McClain and Wyland were not differently treated. Defendant points to the testimony of Saunders asserting that Wyland and McClain were observed on video, but Saunders did not take action against either one. This testimony is contradicted by Mandella and Combine, who did not see video of McClain. Carnuche said that a fact-finding was planned for Wyland, but Wyland retired before it could commence.[9] This testimony is contradicted by that of Combine and Saunders, who both said a fact-finding was not warranted. Taking all facts in a light most favorable to plaintiff, the court finds that, on the record before the court, a jury could rationally conclude that Wyland was treated more favorably than McClain. See Nguyen, 735 F. Supp. 2d 346, 375-76 (employer claimed

---

[9] The timing of the video showing Wyland giving the appearance of sleeping is not clear from the record. Mandella said he saw the video sometime in May 2008. Taking that as true, there may not have been enough time for a fact-finding before Wyland retired on May 17, 2008. McClain's fact-finding took one week to complete in July 2008. Other than Carnuche's testimony, however, there is no evidence that a fact-finding with respect to Wyland was in the initial stages or planned.

plaintiff's comparators were not valid because plaintiff knowingly stole from the employer, whereas the comparators might have made a mistake; however, evidence showed that employer had conclusive proof of theft by the comparators).

## Conclusion

Plaintiff raised genuine disputes about a number of material facts such that it will be necessary for a jury to determine whether defendant's reason for terminating plaintiff was pretextual. For the reasons described above, defendant's motion for summary judgment will be denied. An appropriate order will be entered.


Dated: July 7, 2011                                    By the court:

                                                      /s/ JOY FLOWERS CONTI
                                                      Joy Flowers Conti
                                                      United States District Judge

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THOMAS MCCLAIN,      ) | |
|           ) | |
|     Plaintiff,     ) | |
|           ) | |
|     v.     ) | |
|           ) | Civil Action No. 09-1641 |
| COMMONWEALTH OF     ) | |
| PENNSYLVANIA, DEPARTMENT OF     ) | |
| CORRECTIONS,     ) | |
|           ) | |
|     Defendant.     ) | |

## ORDER

AND NOW, this 7th day of July, 2011, upon consideration of defendant Commonwealth of Pennsylvania, Department of Corrections' motion for summary judgment (ECF No. 21) and the submissions of the parties and for the reasons set forth in the accompanying memorandum opinion, the motion for summary judgment is DENIED.

By the court:

/s/ JOY FLOWERS CONTI
Joy Flowers Conti
United States District Judge